**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Matthew Lewis</u>

    v.                                Civil No. 10-cv-274-JL

<u>Warden, New Hampshire State Prison</u>

**REPORT AND RECOMMENDATION**

Petitioner Matthew Lewis has filed an amended petition for
a writ of habeas corpus (doc. no. 6), asserting two claims
alleging that his conviction was obtained in violation of his
rights to due process and a fair trial, as guaranteed by the
Fourteenth Amendment of the United States Constitution.  Before
the court is Respondent's motion for summary judgment (doc. no.
11) and Petitioner's response thereto (doc. no. 12).  The
district judge has referred the motion to this magistrate judge
for a report and recommendation as to its disposition.  <u>See</u>
Rules 8(b) and 10 of the Rules Governing Section 2254 Cases in
the United States District Courts ("§ 2254 Rules"); 28 U.S.C.
§ 636(b).  For the reasons that follow, the court recommends
that the motion for summary judgment (doc. no. 11) be granted
and the petition (doc. no. 6) be denied.

**Factual Background**

Shortly before midnight on July 14, 2006, Eric Harris and Joseph Dawes walked by a house located at 153 East Main Street in Conway, New Hampshire.  There were several individuals outside.  A verbal exchange between Harris and Dawes, and the people standing outside the house, ensued.  The exchange escalated into a fistfight.  Harris was beaten up by Benjamin Blasi, receiving cuts and bruises, while Dawes fought with another individual.

Harris went home after the fight and contacted the Petitioner, Matthew Lewis, Lewis's girlfriend Rachel West, and Matthew French, a friend and roommate of Lewis and West.  At approximately 1:30 a.m., the four embarked, in West's car, back to 153 East Main Street.  Both Lewis and French were armed with handguns.  Lewis loaded and cocked his gun at some point prior to reaching 153 East Main Street.

When the foursome arrived at 153 East Main Street, they got out of the car and yelled to the inhabitants, who were now inside, to come out.  A woman, Megan O'Day, came out and she and West quickly got into a shoving match, which turned into a fistfight on the ground.  Lewis was close to that fight.  Lewis testified at trial that he was trying to break up the fight. Other witnesses, individuals who had also come out of 153 East

Main Street, testified that Lewis was kicking O'Day as West was beating her on the ground.

Blasi, who was very drunk, had, after the fight with Harris, passed out on a couch inside due to his intoxication. Blasi's friends roused him out of his sleep, with difficulty. At that time, Blasi had been sleeping for about an hour.  During his trial testimony, Blasi described himself at that point as "belligerently drunk and sleeping."

Blasi eventually woke up and went outside in his shorts. Blasi was not carrying a weapon.  Blasi saw an individual, who turned out to be Lewis, near the O'Day/West fight.  Blasi approached Lewis, either running or walking very fast.  Lewis fired his gun, shooting Blasi in the lower abdomen.  Lewis testified he fired when Blasi was in the process of lunging at Lewis and swinging a punch.  Blasi testified that he was eight to ten feet from Lewis when was shot.

After Lewis shot Blasi, Lewis panicked and grabbed West's hand and, along with Harris and French, fled from the scene. Because West had dropped her keys on the lawn, they ran, on foot, through nearby woods, back to Lewis, West, and French's apartment.  Lewis was extremely upset and was crying and shaking uncontrollably.  A friend, Brittany Ellis, came over.  Lewis decided to turn himself into the police.  Ellis accompanied

Lewis to the Conway Police Department where Lewis told the
police he had shot someone earlier in the evening.

According to Lewis's interview with the police that night,
which was essentially consistent with Lewis's testimony at
trial, Lewis was trying to break up the fight between O'Day and
West when he heard someone coming up fast behind him.  Lewis
turned to see Blasi lunging at him.  Lewis, with his gun in his
hand, put his arms up to protect himself from Blasi as Blasi
dove at him.  Lewis stated he shot the gun by accident when
Blasi made contact with the gun.  Lewis stated that he raised
his hands in self-defense, and that he had not intended to shoot
Blasi.

Moments after Blasi was shot, a New Hampshire state trooper
on patrol drove by the residence and came to Blasi's aid.
Blasi's friends were attempting to staunch the bleeding from the
gunshot wound.  An ambulance arrived and transported Blasi to
the hospital.  He was then flown to Maine Medical Center.  Blasi
had serious internal injuries which required a number of
surgeries and other medical interventions to resolve.  Blasi
also had a burn mark on his skin that the emergency room doctor,
Dr. Steven Johnson, testified was consistent with his skin
touching the muzzle of a gun as the gun was fired.  Dr. Johnson,
testified he was not sure how close the gun was to Blasi when it
was fired, as he is not an expert on that subject.

Due to Blasi's condition, the police did not interview him regarding the shooting until August 17, 2006, approximately one month after the incident.  The interviewing police officer, Detective Alan Broyer, testified at trial that at the time of that interview, Blasi appeared to have a clear mind; did not appear to be under the influence of anything; and provided articulate, clear, appropriate, and quick answers to the officer's questions.  Broyer testified that he would have stopped the interview had he had any doubt about Blasi's ability to communicate due to Blasi's medication, or for any other reason.

During the August 17, 2006, interview (hereinafter the "August interview"), Blasi told Broyer that he walked fast, but did not run, toward Lewis.  Blasi also reported he did not see a gun.  Blasi told Broyer that while attempting to swing at, or punch, Lewis, he felt a "jerk."  He then remembered being on the ground and in pain, and then waking up in the hospital.

Lewis was charged with one count of second degree assault, for recklessly causing bodily harm to Lewis by means of a firearm, in violation of N.H. Rev. Stat. Ann. § 631:2, I(b). Lewis's three-day criminal trial began on Monday, May 21, 2007. On the preceding Friday, May 18, the prosecuting attorney, Sally Struble, met with Blasi to prepare his trial testimony.  At that time, and during his testimony at trial, Blasi stated that as he

was approaching Lewis on the night of the shooting, he saw a gun in Lewis's hand, and saw Lewis's arm raised, pointing the gun, when Blasi was eight to ten feet away from Lewis.

At trial, Lewis's attorney, Howard Clayman, objected to the introduction of Blasi's testimony, as he had not been provided with any new written statement by Blasi or notice of any change in Blasi's testimony.  Clayman argued to the court that he was entitled to be apprised of such a change "when it comes up," rather than during the testimony.  Clayman, in arguing his objection, described the statement as a "key statement of the complaining witness," and "an extremely important statement," as it contradicted Blasi's prior statement, upon which Lewis had grounded his claim of self-defense.  Struble argued that she did not take notes while preparing Blasi for trial, and that there was therefore no statement to provide.  The objection was overruled.

Blasi testified at trial that he had not read the transcript of the August interview until the Friday before the trial began.  Blasi further testified at trial that during the August interview, he was on an intravenous morphine drip, was taking ten doses of methadone daily, and was on three other narcotic medications for pain.  Blasi testified that until he read the transcript of the August interview in May 2007, he did

not remember what he had told Broyer during that interview.  At the time of his testimony, Blasi was not taking any medications.

During pretrial discovery in the criminal case, Lewis was provided with Blasi's medical records.  A nurse's note in those records dated August 12, 2006, indicates that Blasi had been taken off morphine and placed on dilaudid and methadone on August 11, 2006.  This discrepancy was not raised prior to or during trial by any witness in or party to the criminal case.

## Procedural Background

Lewis's criminal trial began on May 21, 2007, and ended on May 24, 2007, with the jury's guilty verdict.  Lewis was sentenced on October 17, 2007, to serve ten to twenty years in the New Hampshire State Prison, with two years of the minimum term suspended.  Lewis filed a direct appeal of the conviction in the New Hampshire Supreme Court ("NHSC") on November 6, 2007. In his notice of mandatory appeal, Lewis raised the following three issues:

> 1.    Whether the Court erred in admitting, over defense objection, testimony from the complaining witness regarding the issue of the defendant pointing a gun at him from 7 or 8 feet away;
>
> 2.    Whether the Court erred in denying the defense request for immunity of a witness/co-defendant thereby preventing the defense from presenting exculpatory evidence; and

3.    Whether the Court erred in imposing an
extended term of imprisonment pursuant to N.H. Rev.
Stat. Ann. 651:2 II-g.

Lewis's appellate counsel briefed only the second issue,

regarding the State's refusal to grant immunity to a witness

Lewis wanted to call at trial.

On July 14, 2009, the NHSC issued an order affirming

Lewis's conviction.  See State v. Lewis, No. 2007-0790 (N.H.

Sup. Ct. July 14, 2009).  The only issue addressed in the order

was the immunity issue; the order made neither mention of nor

reference to either of the other two claims raised in the notice

of mandatory appeal.

Lewis filed a motion for a new trial in the Carroll County

Superior Court ("CCSC") on September 29, 2009.  In that motion,

and citing the Sixth and Fourteenth Amendment and the New

Hampshire Constitution, Lewis raised the following issues:

1.    Lewis's trial counsel provided him with
ineffective assistance of counsel on the following bases:

a.    post-trial juror comments indicated that
some jurors believed that Lewis's attorney "did not do
well" or was "unprepared";

b.    trial counsel failed to timely seek immunity
for a defense witness, resulting in the denial of the
motion as untimely and the deprivation of that
witness' testimony at trial;

c.    trial counsel failed to obtain and call a
firearms expert at trial despite Lewis's request that
he obtain such an expert, preventing Lewis from
introducing evidence at trial regarding the muzzle

burn on Blasi's abdomen to support Lewis's self-
defense claim;

     d.   trial counsel did not advise Lewis that he
had received a maximum sentence except for the two
years suspended off of his minimum sentence, and
incorrectly advised Lewis that if he appealed his
sentence to the Sentence Review Committee his sentence
could be increased, causing Lewis not to seek review
of his excessive sentence; and

     e.   trial counsel failed to properly object to
Blasi's trial testimony that varied from Blasi's
pretrial statement, and thus failed to preserve the
issue for appeal.

     2.   The prosecuting attorney engaged in prosecutorial
misconduct by:

     a.   failing to disclose exculpatory and material
evidence that she was obligated to disclose under
Brady v. Maryland, 373 U.S. 83 (1963), and State v.
Laurie, 139 N.H. 325, 653 A.2d 549 (1995), when Blasi
materially changed his testimony three days before
trial began and the prosecutor did not advise Lewis or
his attorney of that change prior to Blasi's trial
testimony;

     b.   allowing and not correcting Blasi's false
testimony regarding a material fact, thereby suborning
perjury, when Blasi testified that he was taking
morphine at the time of the August interview when, in
fact, medical records in discovery had alerted the
prosecutor to the fact that Blasi had stopped taking
morphine six days before that interview;

     c.   granting immunity to Eric Harris, a witness
who made multiple false and conflicting statements
prior to and at trial; and

     d.   failing to charge Eric Harris with a crime
for making false statements to the police.

The CCSC judge hearing Lewis's motion for a new trial

denied the motion on December 11, 2009, in a written order.  See

State v. Lewis, No. 06-S-392 (Carroll Cnty. Super. Ct. Dec. 10,
2009).  In that order, the court stated that after reviewing the
pleadings, arguments, and the record in the case, including the
trial transcript, "[t]he record does not show that justice has
not been done, and does not show that a further trial would be
equitable.  Mr. Lewis' [sic] motion for new trial is denied."
Id.  The court referred to this summary determination as
"sufficient" and stated that it "constitutes the court's ruling
on the pending motion for new trial."  Id.  The court then went
on to discuss the merits of the issues raised in the motion,
"for the sake of completeness and clarity."  Id.

        The CCSC, addressing the claim regarding the failure of the
prosecutor to disclose the change in Blasi's statements prior to
trial, found that because Lewis raised the issue in his direct
appeal, even though the NHSC did not address the issue, he was
not entitled to reassert the issue in a collateral attack on his
conviction.  The court, however, went on to discuss the merits
of that claim.

        The court found that the discrepancy in Blasi's testimony
was presented to the jury during cross-examination, and that the
jury therefore possessed the impeachment evidence with which
Lewis was concerned, and could use it to evaluate Blasi's
credibility.  Id.  The court also found that the issue of
Blasi's medications was "explored at trial," and that the

                                    10

prosecutor's allowing Blasi to testify about being on morphine
did not prejudice Lewis.  Id.  The court then determined that
the medication issue, if handled differently at trial, would not
have made a difference in the outcome of the case.  Upon
concluding that the prosecutor did not commit misconduct, and
that defense counsel's trial performance was not
constitutionally deficient, the CCSC denied Lewis's motion.  Id.

Lewis filed a notice of discretionary appeal in the NHSC on
January 6, 2010, raising the following three issues:

> 1.   Whether the CCSC erred in denying Lewis's
> motion for a new trial due to prosecutorial misconduct
> by ruling that the defendant raised the issue of the
> victim's changed statement on direct appeal, and
> therefore, Lewis was barred from collaterally
> attacking his conviction regarding that statement;
>
> 2.   Whether the CCSC erred in denying Lewis's
> motion for new trial by ruling that the discrepancy in
> Blasi's statements was raised at trial and brought to
> the attention of the jury on cross-examination; and
>
> 3.   Whether the CCSC erred in denying Lewis's
> motion for new trial by finding that the prosecutor's
> permitting Blasi to testify to different information
> than was in the discovery regarding his medications in
> August 2007, did not impact the outcome of the trial
> to Lewis's detriment.

The NHSC declined the appeal on February 17, 2010.  See State v.
Lewis, No. 2010-0011 (N.H. Sup. Ct. Feb. 17, 2010).

Lewis then filed his petition for a writ of habeas corpus
in this court, raising the following issues, as identified in
this court's August 20, 2010, order to amend (doc. no. 3):

11

1.   The prosecutor's failure to disclose prior
to trial Blasi's changed description of the shooting
violated Lewis's rights to due process and a fair
trial under the Fourteenth Amendment, as set forth in
Brady v. Maryland, 373 U.S. 83 (1963), and its
progeny.

2.   The prosecution engaged in misconduct, in
violation of Lewis's rights to due process and a fair
trial under the Fourteenth Amendment, by allowing
Blasi to commit perjury at trial regarding his
medicated status.

### Standard of Review

Respondent has moved for summary judgment on the claims in

the petition.  Summary judgment may be granted "if the movant

shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56.

Neither party here contends that an evidentiary hearing is

necessary to resolve any dispute in the facts of the case; the

relevant facts are available in the record.  The matter

therefore may be resolved on the papers.

The Antiterrorism and Effective Death Penalty Act ("AEDPA")

sets forth the appropriate standard of review, to the extent

that the state courts previously ruled on the merits of Lewis's

claims.  See 28 U.S.C. § 2254(d); Dugas v. Coplan, 506 F.3d 1,

6-7 (1st Cir. 2007) (federal review of habeas petitions normally

governed by § 2254(d) where claim was adjudicated on merits in

state court).  As discussed herein, the claims raised by Lewis

were adjudicated on the merits in the state courts, and
therefore, the review in this case is governed by AEDPA.

I.   AEDPA Standard

The Supreme Court has summarized the AEDPA standard as
follows:

> [A] federal court may not grant habeas relief on any
> claim that was adjudicated on the merits in State
> court proceedings unless the adjudication (1) resulted
> in a decision that was contrary to, or involved an
> unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the
> United States; or (2) resulted in a decision that was
> based on an unreasonable determination of the facts in
> light of the evidence presented in the State court
> proceeding.

Cullen v. Pinholster, ___ U.S. ___, ___, 131 S. Ct. 1388, 1414
(2011) (internal quotations omitted) (citing Harrington v.
Richter, 562 U.S. ___, ___, 131 S. Ct. 770, 787 (2011), and
§ 2254(d)).  AEDPA "'imposes a highly deferential standard for
evaluating state-court rulings' and 'demands that state-court
decisions be given the benefit of the doubt.'"  Felkner v.
Jackson, ___ U.S. ___, ___, 131 S. Ct. 1305, 1307 (2011)
(quoting Renico v. Lett, 559 U.S. ___, ___, 130 S. Ct. 1855,
1862 (2010)).  This standard is difficult for a petitioner to
meet "because it was meant to be" difficult.  Harrington, 131 S.
Ct. at 786; see Jewett v. Brady, 634 F.3d 67, 75-76 (1st Cir.
2011).

> [AEDPA] reserves authority to issue the writ in cases
> where there is no possibility fairminded jurists could
> disagree that the state court's decision conflicts
> with [the Supreme] Court's precedents.  It goes no
> further.  Section 2254(d) reflects the view that
> habeas corpus is a guard against extreme malfunctions
> in the state criminal justice systems, not a
> substitute for ordinary error correction through
> appeal.

Id. (internal quotation marks and citation omitted).

II. Petitioner's Burden

Under AEDPA, a federal habeas petitioner bears the burden

of demonstrating that the challenged state court resolution of

the federal constitutional issues presented in the petition

"resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States," see 28

U.S.C. § 2254(d)(1), or "resulted in a decision that was based

on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding," see 28 U.S.C.

§ 2254(d)(2).  The Supreme Court has explained the distinction

between decisions that are "contrary to" clearly established

federal law, and those that involve an "unreasonable

application" of that law:

> Under the "contrary to" clause, a federal habeas court
> may grant the writ if the state court arrives at a
> conclusion opposite to that reached by [the Supreme]
> Court on a question of law or if the state court
> decides a case differently than [the Supreme] Court
> has on a set of materially indistinguishable fats.

> Under the "unreasonable application" clause, a federal
> habeas court may grant the writ if the state court
> identifies the correct governing legal principle from
> [the Supreme] Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's
> case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  To demonstrate

that a state court's application of federal law was

"unreasonable," petitioner must do more than show that the state

court's application of the law was "incorrect."  See id. at 410-

11.  Instead, "[a] state court's determination that a claim

lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the

state court's decision."  Harrington, 131 S. Ct. at 786 (quoting

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

    Similarly, federal courts may not grant an application for

a writ of habeas corpus "based on a claim already adjudicated on

the merits in state court unless that adjudication 'resulted in

a decision that as based on an unreasonable determination of the

facts in light of the evidence presented in the State court

proceeding.'"  Wood v. Allen, ___ U.S. ___, ___, 130 S. Ct. 841,

845 (2010) (quoting § 2254(e)(1)).  This court must presume that

a state court's determination of a factual issue is correct.

See id.  "[T]he petitioner shall have the burden of rebutting

the presumption of correctness by clear and convincing

evidence."  Id.

**Discussion**

I.   "Brady" Claim – Claim 1

As discussed above, AEDPA applies to any claim "adjudicated on the merits" by a state court.  See 28 U.S.C. § 2254.  If the Brady claim here was adjudicated on the merits in the state court, and is therefore reviewable under the AEDPA standard, this court should examine "the last reasoned state court decision," on the claim, which is the "relevant state court determination for purposes of AEDPA review."  See Ylst v. Nunnemaker, 501 U.S. 797, 804-06 (1991).  Here, the last court to issue a reasoned state court decision on Lewis's claim was the CCSC ruling on Lewis's motion for a new trial.  This court must determine, therefore, whether the state court's decision on Lewis's Brady claim "was contrary to, or involved an unreasonable application of, Federal law, as established by the Supreme Court . . . or was based on an unreasonable determination of the facts in light of the evidence" before the state court.  See 28 U.S.C. § 2254(d)(1) & (2).  If the state court decision on a claim did not unreasonably apply federal law or unreasonably determine the facts, this court must defer to the state court's factual and legal rulings, and must deny the petition.  See Cullen, 131 S. Ct. at 1398.

The CCSC's order denying Lewis's motion for new trial
initially announced that its ruling would be a summary denial,
indicating that the motion had been considered on the merits,
the trial record had been reviewed, and the court had found that
no new trial was warranted.  See State v. Lewis, No. 06-S-392 at
2-3.  The court went on, however, to further find that Lewis's
claim was likely procedurally defaulted because he had raised,
but not briefed, a challenge to the admission of Blasi's
statement in his direct appeal.  Finally, the court considered
the Brady claim on its merits, and determined that, on the
merits, Lewis was not entitled to relief on his Brady claim.

Because the state court considered and adjudicated Blasi's
Brady claim on its merits, this court reviews that ruling to
determine whether the state court decision "was contrary to, or
involved an unreasonable application of, clearly established
Federal law . . . or . . . resulted in a decision that was based
on an unreasonable determination of the facts in light of the
evidence presented in the State court proceeding." Cullen, 131
S. Ct. at 1414 (citing 28 U.S.C. § 2254(d)).  The court will
give appropriate deference to the state court, giving the state
court decision the benefit of any doubt.  See Felkner, 131 S.
Ct. at 1307.

> [W]hen the State withholds from a criminal defendant
> evidence that is material to his guilt or punishment,
> it violates his right to due process of law in

> violation of the Fourteenth Amendment. . . .
> [E]vidence is 'material' within the meaning of Brady
> when there is a reasonable probability that, had the
> evidence been disclosed, the result of the proceeding
> would have been different.  In other words, favorable
> evidence is subject to constitutionally mandated
> disclosure when it "could reasonably be taken to put
> the whole case in such a different light as to
> undermine confidence in the verdict."

Cone v. Bell, ___ U.S. ___, 129 S. Ct. 1769, 1782 (2009) (citing

cases including Brady, 373 U.S. at 87, and United States v.

Bagley, 473 U.S. 667, 682 (1985), and quoting Kyles v. Whitley,

514 U.S. 419, 435 (1995)).  To establish prejudice under Brady,

Lewis must demonstrate that there was a "reasonable probability

that the result of the trial would have been different if the

suppressed [statement] had been disclosed to the defense."

Strickler v. Greene, 527 U.S. 263, 290 (1990) (internal

quotation marks and citation omitted).

> A defendant must show that learning the information
> altered the subsequent defense strategy, and that
> given a more timeous disclosure, a more effective
> strategy would likely have resulted.  It is not enough
> . . . merely to assert that he would have conducted
> cross-examination somewhat differently.  At the very
> least, he needs to show that a plausible strategic
> option was foreclosed by the delay.  The impact of the
> delayed disclosure turns, in part, on the extent [to
> which] the defendant actually managed to use the
> disclosed matter despite the delay.

United States v. Bender, 304 F.3d 161, 164-65 (1st Cir. 2002)

(internal citations, quotations, and other punctuation omitted).[1]

---

[1]AEDPA requires that the relevant legal rule be clearly
established in a holding of the Supreme Court, and not in dictum

18

Impeachment evidence that "'is cumulative or collateral'" does not satisfy the <u>Brady</u> materiality requirement, because such cumulative or collateral evidence would necessarily fail to "'create a reasonable doubt that does not otherwise exist.'" <u>United States v. Astacio-Espino</u>, ___ F. Supp. 2d ___, ___, 2011 WL 1752181, *2 (D.P.R. May 9, 2011) (quoting <u>United States v. Dumas</u>, 207 F.3d 11, 16 (2000) (internal citation omitted)).

The CCSC, in its order denying Lewis a new trial, found that because "the discrepancy in the victim's statements was brought to the attention of the jury on cross-examination" the proceedings, including the verdict, were not prejudiced by the prosecutor's failure to provide the statement to Lewis prior to trial. <u>See</u> <u>State v. Lewis</u>, No. 06-S-392 at 203. The relevant state court factual findings that the suppressed statement was introduced and explored on cross examination, which underlay the court's finding that there was no prejudice to Lewis, are presumed to be correct. <u>See</u> 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be

---

or lower federal court holdings. <u>See</u> <u>Williams</u>, 529 U.S. at 412. Other federal court decisions may be relevant to determine reasonableness, however, "to the extent that inferior federal courts have decided factually similar cases," and therefore "reference to those decisions is appropriate in assessing the reasonableness <u>vel</u> <u>non</u> of the state court's treatment of the contested issue." <u>Ouber v. Guarino</u>, 293 F.3d 19, 26 (1st Cir. 2002) (internal quotation marks and citation omitted).

presumed to be correct," unless rebutted by "clear and
convincing evidence").

Petitioner has not sought to challenge the finding that the
suppressed statement was explored on cross examination of Blasi.
As to the question of prejudice, however, petitioner argues
that, with advance notice of the change in Blasi's statement, he
could have obtained a firearms expert to testify that the burn
on Blasi's abdomen was caused by skin contact with the muzzle at
the time the gun was fired.  Such evidence, if admitted, Lewis
claims would controvert Blasi's new testimony regarding the
distance between Lewis and Blasi at the time of the shooting,
and, therefore, Blasi's credibility.  Lewis also claims that
such expert testimony would support Lewis's claim of self-
defense, in that it would tend to demonstrate that Lewis did not
shoot his gun until Blasi was right on top of him, rather than
eight to ten feet away.  Excepting Lewis's assertion of his
personal belief, however, as to what a firearms expert would say
about the burn on Blasi's abdomen, nothing in the record before
the court indicates that any expert has actually offered that
opinion, or that Lewis has ever contacted an expert to discuss
the issue.  To the contrary, Lewis, in his motion for new trial,
claimed, in part, that his attorney was ineffective because he

failed to retain a firearms expert.[2]  Lewis's belief that an
earlier disclosure of Blasi's changed statement would have
resulted in Lewis being able to obtain expert firearms
testimony, and that such testimony would be helpful, is merely
speculative.

Further, the court notes that Dr. Johnson testified
regarding the cause of the burn.  Dr. Johnson testified that
while he was not a firearms expert, and could not determine
definitively whether or not the muzzle burn on Blasi's abdomen
was caused by actual contact with a gun, based on his
observations, the burn mark on Blasi's abdomen was consistent
with that scenario.  Lewis's attorney, in his closing argument,
reminded the jury of the muzzle burn evidence and argued that it
was caused by direct contact between the gun and Blasi's skin.
Therefore, even if the court were to find that calling a
firearms expert to explain the muzzle burn was "a plausible
strategic option," Bender, 304 F.3d at 165, foreclosed by the
failure of the prosecutor to timely provide Lewis with notice of
Blasi's changed statement, nothing in the record would allow the
court to find that a firearms expert would have been able to
provide a more definitive explanation regarding the muzzle burn

---

[2]The ineffective assistance of counsel claim is not raised
in the habeas petition before this court.

mark, or an explanation more favorable to the defense, than Dr. Johnson.

As stated above, and as established by the Supreme Court, prejudice is a necessary showing for a successful Brady claim. See Cone, 129 U.S. at 87; Youngblood v. West Virginia, 547 U.S. 867, 870 (2006).  The CCSC found that no prejudice ensued from the late disclosure of the change in Blasi's testimony. Therefore, unless the CCSC's decision evinced "an unreasonable application of established Federal law, as determined by the Supreme Court of the United States," see 28 U.S.C. § 2254(d)(1), the CCSC's legal conclusion on the Brady question is entitled to deference, and the claim will not be further reviewed by this court.  See 28 U.S.C. § 2254(d) (habeas petition "shall not be granted" with respect to a claim adjudicated on the merits if §§ 2254(d)(1) and (2) do not apply).  The petitioner has not cited any Supreme Court precedent that was either unreasonably applied by the state court or contrary to the state court's decision in this case.  Accordingly, this court finds that petitioner is not entitled to relief on the Brady claim in the petition, and the court should grant the motion for summary judgment on that claim.

II.  Prosecutorial Misconduct

Lewis charges that his Fourteenth Amendment due process rights were violated by the misconduct of the state prosecutor when she suborned perjury by failing to correct Blasi's false testimony that he was taking morphine at the time of the August interview.  Lewis asserts that Blasi's medical records, in the possession of the state and provided to Lewis in discovery, show that Blasi had been taken off morphine approximately six days before the interview.  Lewis litigated this issue in his motion for new trial before the CCSC.

The CCSC, in ruling on Lewis's motion for a new trial, considered this claim on its merits.  Accordingly, as explained above, this court must defer to the state court's decision unless it finds that § 2254(d)(1) or (2) applies.

As previously discussed, Blasi testified to different information than what he told the police in the August interview regarding the distance between himself and Lewis at the time he was shot.  Blasi explained the discrepancy to the jury by stating that he was on a lot of medication – five narcotic pain killers including morphine - during the August interview, and the medication affected his memory.  The gist of Lewis's claim that the prosecutor suborned perjury is that the prosecutor allowed Blasi to falsely add morphine to the list of drugs he was taking during the August interview in order to bolster his

23

credibility and help explain why his testimony had changed. Lewis claims the prosecutor allowed the false testimony to come in without correction because it helped to defeat Lewis's self-defense claim.

The CCSC's findings with respect to the medication testimony were that the issue was "explored at trial," and that "a review of the record does not disclose that this issue, if handled differently at trial, would have made a difference in the outcome of the case."  See State v. Lewis, 06-S-392 at 4. While state court findings of fact are entitled to a high degree of deference upon review, and are presumed to be correct, petitioner may rebut this presumption by "clear and convincing evidence."  Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007).

Lewis asserts here, and the trial record confirms, that neither his attorney nor the prosecutor challenged or corrected Blasi's testimony regarding morphine, despite the fact that the testimony conflicted with medical records in the possession of both parties.  If the CCSC intended in making the statement that the evidence was "explored at trial," to indicate that it was the subject of cross-examination, the CCSC is incorrect.  The CCSC's factual finding, however, was not specific as to what constituted "explor[ation] at trial" regarding the morphine evidence.

24

The evidence before the CCSC was that Blasi testified that he was taking morphine and four other narcotics at the time of the August interview.  Lewis presented the CCSC with a medical record that indicated Blasi had in fact stopped taking morphine, but not the other narcotics, six days before the August interview.  The court, with that information, determined that, had the matter been "handled differently at trial," – presumably meaning if the inaccuracy in Blasi's testimony regarding his narcotic intake had been brought to the attention of the jury – there would have been no difference in the outcome of the case.

Lewis's showing in this regard, however, does not constitute clear and convincing evidence sufficient to undermine the factual finding that the issue was "explored at trial"; the trial transcripts reveal that Blasi was taking a large amount of narcotic pain medication at the time of his August interview, and the court properly characterized the existence of that evidence as an "explor[ation]" of the impact of medication on Blasi's credibility.  The jury would have had that information available to it in evaluating Blasi's credibility.

Presuming the facts as found by the state court are correct, the court turns to whether the state court's ultimate legal conclusion was "contrary to" or "an unreasonable application of" federal law.  See 28 U.S.C. § 2254(d)(1).  Lewis charges that the prosecutor suborned perjury by failing to

correct Blasi's testimony that she knew to be false.  The
knowing use of perjured testimony by a prosecutor to obtain a
conviction renders that conviction "fundamentally unfair."
Perkins v. Russo, 586 F.3d 115, 119 (1st Cir. 2009) (quoting
United States v. Agurs, 427 U.S. 97, 103 (1976)).  Such a
conviction "must be set aside if there is any reasonable
likelihood that the false testimony could have affected the
judgment of the jury."  Id.

    As discussed above, the state court found that no prejudice
to Lewis ensued from the admission in evidence of the morphine
testimony.  This court concurs in that finding; it was
reasonable for the court to find that the exclusion of morphine
from the list of narcotics Blasi was taking would not have
impacted the jury's determination of the credibility of his
testimony, in a manner likely to alter the verdict in the case.

    The state court, while not explicitly citing federal law,
appropriately examined whether the inclusion of the morphine
testimony would have affected the outcome of the trial.  See
Early v. Packer, 537 U.S. 3, 8 (2002) (state court need not rely
upon or cite Supreme Court precedent in order to resolve
petitioner's claim as long as the court's reasoning is in accord
with the law established by the Supreme Court).  The state
court's determination of the issue was not, therefore, "contrary
to, or an unreasonable application of Federal law, as

26

established by the Supreme Court of the United States."  28
U.S.C. § 2254(d)(1).  Nor was it "based on an unreasonable
determination of the facts."  Id. § 2254(d)(2).  Accordingly,
the claim in the petition alleging a due process violation
arising out of prosecutorial misconduct for suborning perjury
should be denied, and the court should grant the respondent's
motion for summary judgment on that claim.

III. Certificate of Appealability

     The § 2254 Rules require the district court to "issue or
deny a certificate of appealability when it enters a final order
adverse to the party."  § 2254 Rule 11(a).  The court will issue
the certificate "only if the applicant has made a substantial
showing of the denial of a constitutional right."  28 U.S.C.
§ 2253(c)(2).  The petitioner has failed to make such a showing.
Accordingly, the court should deny a certificate of
appealability if it approves this Report and Recommendation and
denies the petition.

**Conclusion**

     For the foregoing reasons, the court finds that petitioner
has failed to demonstrate that he is entitled to a writ of
habeas corpus pursuant to 28 U.S.C. § 2254.  The court
recommends that the motion for summary judgment (doc. no. 11) be
GRANTED, and that the amended petition for a writ of habeas

corpus (doc. no. 6) be DENIED. Should the court adopt this recommendation, the court should also deny a certificate of appealability.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. <u>See</u> Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. <u>See</u> <u>Sch. Union No. 37 v. United Nat'l Ins. Co.</u>, 617 F.3d 554, 564 (1st Cir. 2010); <u>United States v. Lugo Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008).

_____
Landya B. McCafferty
United States Magistrate Judge

Date: August 5, 2011

Cc:  Matthew Lewis, pro se
     Elizabeth C. Woodcock, Esq.

LBM:jba